IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN GRAVES, )
)
        Plaintiff, )
  v. )
)
CAROLYN W. COLVIN,[1] )
Commissioner of Social Security, )
)     12CV643
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Graves brought this action pursuant to 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance under Title II and Title XVI of the Social Security Act. (Doc. #1.) The administrative record was certified to the Court for review.[2] The parties filed cross-motions for judgment on the pleadings. (Docs. #10, 13.) For the reasons stated below,

---

[1] Acting Commissioner of Social Security Carolyn W. Colvin in substituted for Michael Astrue, the named Defendant at the time the instant action was filed. See Fed. R. Civ. P. 52(d).
[2] All references to the administrative record are noted as "A.R."

Mr. Graves' Motion for Judgment on the Pleadings is DENIED, and Defendant's Motion for Judgment on the Pleadings is GRANTED.

I.

On June 27, 2008, Mr. Graves filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplement security income, alleging on onset date of September 1, 2007. (A.R. 144-62.)  These claims were denied initially and upon reconsideration (id. at 64-67, 72-79 and 84-101), after which Mr. Graves requested a hearing (id. at 29-34, 102-31).  On April 22, 2010, Mr. Graves and his attorney appeared before an Administrative Law Judge ("ALJ") who heard testimony from Mr. Graves and a vocation expert ("VE"). (Id. at 36-60.)  In her decision dated July 27, 2010, the ALJ found Mr. Graves not disabled. (Id. at 18-27.)  The ALJ's decision became the Commissioner's final decision for purposes of judicial review when the Appeals Council denied Mr. Graves' requested review. (Id. at 1-6.)

In the instant action, Mr. Graves alleges that the ALJ committed reversible error by (1) failing to give controlling weight to the opinion of his treating psychiatrist, Dr. Ruta Nene, (2) failing to treat his borderline intellectual functioning as a severe impairment, and (3) failing to question

2

the VE regarding his borderline intellectual functioning and relying on VE testimony that was inconsistent with the Dictionary of Occupational Tables ("DOT"). Substantial evidence supports the ALJ's decision, and, thus, there is no error.

II.

Federal law authorizes judicial review, albeit "extremely limited" in scope, of the Social Security Commissioner's denial of social security benefits. See 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006); Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "The issue before [the Court], therefore, is not whether [the plaintiff] is disabled, but whether the ALJ's finding that [the plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 586 (4th Cir. 1996). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales,

402 U.S. 389, 390 (1971)). This Court does not re-weigh evidence or make credibility determinations. Id.

A.

Mr. Graves first claims that not only did the ALJ err by failing to give controlling weight to the opinion of his treating psychiatrist, Dr. Ruta Nene, when assessing his mental residual functioning capacity ("RFC"), but the ALJ ignored Dr. Nene's treatment notes in Exhibit 16F.[3] As part of the analysis to determine Mr. Graves' RFC, the ALJ found that the statements he made regarding the intensity, persistence, and functionally limiting effects of his mental condition, as well as statements that Dr. Nene made in her March 15, 2010 medical source statement ("MSS"), were not substantiated by objective medical evidence and Mr. Graves' statements were not credible based on the entire case record. (A.R. 22-25.)

While the treating physician rule generally requires a court to afford greater weight to the opinion of a treating physician, it does not necessarily require that the opinion be given controlling weight. Hunter, 993 F.2d at 35.

---

[3] Mr. Graves incorrectly asserts that Exhibit 16F evidences nineteen appointments he had with Dr. Nene over a fourteen-month period between November 2008 and January 2010. Instead, those records reflect only seven appointments with Dr. Nene; the remainder were with substance abuse counselors or other physicians.

4

If the treating physician's opinion on the issues of the nature and severity of impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with other substantial evidence, the ALJ gives the opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2). However, an ALJ is entitled to give less weight to the opinion of a treating physician when it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." Craig, 76 F.3d at 590 (finding sufficient evidence supported the rejection of the treating physician's conclusory opinion and that the record contained persuasive contradictory evidence). When the ALJ does not give the treating physician's opinion controlling weight, she examines factors in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6) to determine the weight to afford the opinion. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ had an adequate basis for not giving Dr. Nene's opinion controlling weight. The ALJ specifically referenced other evidence of record which is inconsistent with Dr. Nene's opinions. Pursuant to 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6), the ALJ examined and gave weight to the opinions of Dr. Gibbs (Exhibit 7F), who found Mr. Graves capable of performing simple repetitive work under certain conditions, and Dr. Barber

5

(Exhibit 8F), who observed that Mr. Graves did not consistently take his medication. (A.R. 23, 25.) The ALJ also relied on non-examining state agency assessments (Exhibits 5F, 9F, 10F, 11F, 13F, 14F, and 15F) and weighed them in accordance with § 404.1527(e). (Id. at 25.) Further, the notes contained in Exhibit 16F are, themselves, evidence of the incongruity between the observations of Dr. Nene and others at Lincoln Community Health during the course of their treatment and Dr. Nene's opinion offered in the March 15, 2010 MSS. Exhibit 16F contains a number of treatment records observing improvement in Mr. Graves' symptoms in spite of his admitted failure to always follow the treatment regimen. (See, e.g., id. at 430, 433, 436, 441, and 451.)

Therefore, although the ALJ did not specifically refer to records in Exhibit 16F,[4] substantial evidence supports the ALJ's conclusion that "[t]he opinion of Dr. Nene is not consistent with the medical evidence in the record[;] [at the time she issued the MSS,] Dr. Nene had provided only minimal, first hand care for the claimant [when she saw Mr. Graves for 30

---

[4] The ALJ does discuss a November 13, 2008 record completed by Dr. Nene. (A.R. 24) However, that record is a psychiatry intake record and is part of both Exhibit 16F and Exhibit 12F. (See A.R. 453-54 (Ex. 16F) & A.R. 381-82 (Ex. 12F).) Read in context, the ALJ's reference to the November 13, 2008 record is as it appears in Exhibit 12F.

6

minutes every two months; and] [t]he level of treatment the claimant has received does not support the degree of limitation alleged." (Id. at 24.) Dr. Nene's treatment records in Exhibit 16F do not suggest otherwise, as indicated above. See Brittain v. Sullivan, No. 91-1132, 1992 WL 44817, *6 (4th Cir. Mar. 11, 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); Brewer v. Astrue, No. 7:07-CV-24-FL, 2008 WL 4682185, *3 (E.D.N.C. Oct. 21, 2008) (unpublished) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

    In sum, it is clear from the ALJ's decision that in evaluating the evidence, the ALJ properly applied the factors listed in paragraphs (c)(2)(i), (c)(2)(ii), and (c)(3) through (c)(6) of 20 C.F.R. § 404.1527 in deciding what weight to give Dr. Nene's opinion. The ALJ did not commit reversible error in finding that Dr. Nene's opinion was "not consistent with the medical evidence of record" and "[t]he level of treatment the claimant has received [did] not support the degree of limitation alleged." (A.R. 24.)

7

Case 1:12-cv-00643-NCT-JLW   Document 16   Filed 09/03/15   Page 7 of 15

B.

Mr. Graves next claims that the ALJ erred at step two by failing to find his borderline intellectual functioning to be a severe impairment. Dr. Nene opined that Mr. Graves did not have a low I.Q. or reduced intellectual functioning. (Id. at 459.) This condition is mentioned by consulting psychiatrist, Dr. Gibbs, who diagnosed Mr. Graves with borderline intellectual functioning. (Id. at 343–45.) It appears from her report that the diagnosis is not based on objective testing but rather on Mr. Graves' statements that he left school in the eighth grade and that he had been in special education classes. (Id. at 344.)

Furthermore, a diagnosis of an impairment alone is insufficient to establish a severe impairment at step two. See Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986) (mere diagnosis of a condition is insufficient to prove disability; there must be a showing of related functional loss). See also Mecimore v. Astrue, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) (explaining that evidence of diagnosis does not establish disability and is not tantamount to evidence showing functional limitations stemming from the diagnosed impairment) adopted, 2011 WL 3565080 (Aug. 12, 2011). To establish a severe impairment, a claimant

8

must provide medical evidence that his impairments significantly limit his ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 140–42, 146 n. 5, 107 S. Ct. 2287, 2290-92, 2294 n. 5 (1987) (citation omitted). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citation omitted); see SSR 85–28.

Here, Mr. Graves has failed to demonstrate what impact, if any, his borderline intellectual functioning has on his ability to engage in substantial gainful activity. As noted by the ALJ, his past work included positions as a concrete finisher and as a power press tender. (A.R. 25.) The VE testified that these positions had specific vocational preparations ("SVP") of seven and three, respectively which, in turn, correspond to skilled and semi-skilled work. (Id. at 57); SSR 00-4p (providing that SVP of 3-4 equates to semi-skilled work and SVP of 5-9 equates to skilled work). Accordingly, the ALJ could conclude that Mr. Graves' borderline intellectual functioning resulted in no significant limitations based on his past work in skilled labor with the

9

impairment. See Widener v. Astrue, No.2:11-CV-670, 2012 WL 4356712, at *11 (S.D.W. Va. June 19, 2012) (recommending affirming the ALJ's conclusion that the claimant's borderline intellectual functioning resulted in no significant limitations because he worked for more than 20 years in skilled work with the impairment and thus was a non-severe impairment) adopted, 2012 WL 4356673 (S.D.W. Va. Sept. 24, 2012).

Moreover, because the ALJ found at least one severe impairment and proceeded through the sequential evaluation, any error resulting from a failure to characterize the borderline intellectual functioning as a severe impairment is harmless. See Prince v. Colvin, 5:11–CV–763, 2013 WL 1786634, *2 (E.D.N.C. Apr. 25, 2013) ("[W]here an ALJ nonetheless proceeds with the sequential evaluation upon the basis of other severe impairment(s), the failure to consider whether any other impairment also qualifies as 'severe' is harmless error."). In this case, the ALJ proceeded to the subsequent steps of the sequential evaluation, and she expressly stated that she considered all of Mr. Graves' symptoms. (A.R. at 22).

Mr. Graves failed to identify any limitations resulting from his borderline intellectual functioning. The ALJ properly considered all of Mr. Graves' impairments through the five step evaluation process. Therefore,

10

the ALJ did not commit reversible error by failing to characterize any borderline intellectual functioning as a severe impairment.

C.

Next, Mr. Graves claims that the ALJ failed adequately to assess the vocational evidence in finding that there are jobs that exist in significant numbers in the national economy that Mr. Graves can perform (A.R. 26-27). Mr. Graves challenges this finding on several bases. First, he claims that the ALJ erred by failing to include his borderline intellectual functioning and limitations in concentration, persistence, and pace in the hypothetical to the VE. The ALJ's hypothetical included, among other things, an individual who "has limited education" and "can do simple, routine, repetitive work tasks" who "should not do quota based work." (Id. at 57-59.)

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Cf. Yoho v. Comm'r of Social Sec., No. 98-1684, 168 F.3d 484 (table), 1998 WL 911719, *3 (4th Cir. Dec. 31, 1998) (unpublished) ("There is no obligation to transfer the findings [from a

mental impairment report] verbatim to the hypothetical questions."). So long as the hypothetical adequately encompasses the effects of a claimant's mental limitations, it suffices. Id.

Here, the ALJ did not err in forming the hypothetical to the VE. The evidence showed, and the hypothetical noted, that Mr. Graves had "limited education" and was only able to perform "simple, routine, [and] repetitive work tasks." The evidence showed that Mr. Graves had only moderate concentration, persistence, and pace difficulties. Unlike the cases that Mr. Graves cited, no I.Q. tests showed his diminished I.Q. Rather, one consulting psychiatrist indicated, based on Mr. Graves' statements and her observation of him, that he had borderline intellectual functioning but was still able to understand "simple repetitive instructions and tasks within a work setting." (A.R. 345.) The ALJ's hypothetical adequately took into consideration any deficiencies in concentration, persistence, and pace, as well as any of Mr. Graves' limitations on intellectual functioning. See Parker v. Astrue, 792 F. Supp. 2d 886, 895-96 (E.D.N.C. June 9, 2011) (finding that the ALJ's hypothetical concerning someone who is capable of doing "simple, routine, and repetitive tasks" accounted for the plaintiff's "borderline intellectual functioning and moderate concentration difficulties").

12

Second, Mr. Graves claims that the ALJ erred in accepting the testimony of the VE because the testimony was in conflict with the DOT. Specifically, he argues that two of the jobs identified, dining room attendant and food service worker, require extended contact with other people under the Selected Characteristics of Occupations. See SCO § 9.05 (Attendant Services). He contends that this is contrary to his RFC, which provides a limitation for interactions with others. However, a list of the tasks associated with these positions in the DOT identifies several duties, many of which do not involve public contact. See DOT 311.677-018, 319.677-014. Accordingly, it is conceivable that Mr. Graves could perform a significant number of tasks associated with these jobs without exceeding his RFC.

SSR 00–4p requires an ALJ to elicit a reasonable explanation for "an apparent unresolved conflict" between VE testimony and the DOT. Carson v. Colvin, No. 1:12-CV-262, 2014 WL 253537, at *9 (W.D.N.C. Jan. 23, 2014). After the VE testified that someone with Mr. Graves' RFC could work as a hospital cleaner, dining room attendant, and food service worker, the ALJ asked, "Would the food service worker not – have no sustained contact with the general public?" to which the VE replied, "No." (A.R. 58.)

While the exchange is not entirely clear, it appears as though the ALJ was clarifying the VE's testimony in light of the hypothetical.

Furthermore, the Commissioner argues that Mr. Graves never raised this issue of an alleged conflict at the hearing when the VE was testifying.

> Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000) cited in Carson, 2014 WL 253537, at *9. Even if Mr. Graves' claim is not waived for failure to raise the conflicts at the hearing, no apparent conflicts support remand. The VE was qualified to determine which jobs Mr. Graves could perform, given the limitations set forth by the RFC, and the ALJ was entitled to rely on the VE's testimony. See Carson, 2014 WL 253537, at *9.

Moreover, even if the dining room attendant and food service worker jobs included duties falling outside of Mr. Graves' RFC, the description of tasks for the hospital cleaner job does not include interaction with others. Therefore, it is sufficient to satisfy the Commissioner's burden at step five. See Prunty v. Barnhart, No. 6:04-CV-00038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony identifying one job that the claimant could perform as sufficient to meet ALJ's step-five burden).

14

Mr. Graves additionally argues that the jobs identified by the VE have reasoning levels of 2 ("R2") (dining room attendant and hospital cleaner) or 3 ("R3") (food service worker).  He maintains that R2 and R3 jobs are beyond the capacity of a claimant who is limited to simple, routine, repetitive tasks.  Contrary to his argument, "a number of courts have recently held that there is no per se conflict between a job classified at reasoning level three and a limitation to simple, routine, unskilled work."  Green v. Colvin, No. 1:10-CV-561, 2013 WL 3206114, at *9 (M.D.N.C. June 24, 2013) adopted, 2013 WL 4811705 (Sept. 9, 2013).  Accordingly, the positions identified are not precluded by the fact that Mr. Graves' RFC limits him to simple, routine, repetitive tasks.  Therefore, the ALJ did not commit reversible error with respect to the testimony of the VE.

III.

For the reasons set forth above, IT IS HEREBY ORDERED that Mr. Graves' Motion for Judgment on the Pleadings, Doc. #10, is **DENIED**, and Defendant's Motion for Judgment on the Pleadings, Doc. #13, is **GRANTED**.

This the 3rd day of September, 2015.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

15